**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maria Asuncion Martinez DE HERNANDEZ, Baldomero Hernandez-Gonzales, Carmen Perea, Carlos Perea, Salvador Pineda-Vergara, Defendants-Appellants.**

**Nos. 83–1008, 83–1009, 83–1062, 83–1063 and 83–1074.**

United States Court of Appeals, Tenth Circuit.

Sept. 28, 1984.

---

Reber Boult, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant Maria Asuncion Martinez de Hernandez.

Patrick H. Kennedy, Albuquerque, N.M., for defendant-appellant Baldomero Hernandez-Gonzales.

Alfred M. Carvajal of Alfred M. Carvajal, P.A., Albuquerque, N.M. (Torrence B. Harrison, with him on the brief), Albuquerque, N.M., for defendants-appellants Carlos Perea and Carmen Perea.

Victor R. Ortega of Montgomery & Andrews, P.A., Santa Fe, N.M. (Wesley B. Howard, Santa Fe, N.M., with him on the brief), for defendant-appellant Salvador Pineda-Vergara.

William L. Lutz, U.S. Atty., Albuquerque, N.M. (Don J. Svet, First Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, SETH, and DOYLE, Circuit Judges.

SETH, Chief Judge.

This is a consolidated appeal taken by five defendants from their convictions on various charges relating to the unlawful transportation of illegal aliens. 8 U.S.C. § 1324; 18 U.S.C. §§ 2, 371.

The Government established at trial that numerous Mexican and El Salvadoran citizens who wished to enter the United States contacted the defendant Pineda-Vergara. Pineda-Vergara owned a sort of rooming house at Ciudad Juarez to which the persons would come. Apparently he would then arrange for them to cross the Rio Grande and illegally enter the United States through the city of El Paso. The aliens would enter by way of a hole cut in the fence on the American side of the Rio Grande. They would then be immediately taken to a house owned by the defendants Martinez de Hernandez and Hernandez-Gonzales. The aliens would then be hidden there until they could be transported. That transportation was effected by the defendants Carlos and Carmen Perea. The Pereas would then take the aliens by car or motor home to Belen or Lamy, New Mexico and then put them on a train headed to the Midwest. A jury convicted the defendants after a lengthy trial on all charges. These counts related to the transportation of illegal aliens. 8 U.S.C. § 1324; 18 U.S.C. §§ 2, 371.

On appeal, the defendants have raised numerous assignments of error. The two most serious points are that the trial court communicated with the jury during its deliberations at which neither the defendants nor their attorneys were present in response to questions from the jury; and secondly, issue is taken with the instruction given as to the consequences of defendants not testifying.

The trial judge received a question from the foreman of the jury during its deliberations. The question was:

"Do all decisions have to be unanimous?"

The judge did not advise the parties or the attorneys of the question and responded:

"Members of the Jury: All verdicts you return have to be unanimous one way or the other. If you cannot agree as to any then you do not return a verdict as to it."

The question was whether "decisions" have to be unanimous and the answer was that "verdicts" have to be unanimous. This would not ordinarily be significant but verdict forms had been provided to the jury. There was a sheet for each defendant and the sheet was headed "Verdict". Below the heading "Verdict" there were spaces opposite each count for the finding of the jury. With the response of the judge to "decisions," it is apparent that the jury could well have believed that its question as to decisions with the answer of the court meant that the "decisions" as to each count had to be the same to make the "verdict" unanimous.

The court's answer to the unanimous decision question was confusing and created a definite possibility for prejudice. The answer was in substance a reinstruction on the point and departed from the instructions originally given.

The Government did not show the communication as to "decisions" to be harmless error. The trial court's response to the jury is by no means in "strict and exact conformity," *see United States v. Arriaga-*

*da*, 451 F.2d 487 (4th Cir.), with the charges previously given in the defendants' presence. Rather, it is susceptible to various interpretations. "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." *Bollenbach v. United States*, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350. The trial court's instruction, delivered *ex parte*, deprived the defendants of any opportunity of clarifying the ambiguity created by the supplemental instruction. That deprivation constitutes reversible error. *United States v. Schor*, 418 F.2d 26 (2d Cir.).

■ Another communication was in response to a request from the jury for: (1) all photographs; (2) video tape; (3) money orders; and (4) Exhibit 79. The trial court sent the video tape and money orders to the jury, but did not allow the jury to view Exhibit 79 as it had not been admitted. The record does not clearly indicate if the jury was permitted to view the photographs. All the decisions as to whether to send material to the jury were made without benefit of argument by counsel and outside the presence of the defendants.

The jury also sent a note to the trial court inquiring:

"Do overt acts deal only with Count I, or do they also deal with the other counts of transporting? Also could we have an instruction of 8 U.S.C. 1324(a)(2). I can't seem to find the specific sheet on this in the instructions."

The trial court responded, *ex parte:*

"Members of the Jury:

"The overt acts pertain to Count I and no other."

The trial court did not furnish an additional instruction regarding 8 U.S.C. § 1324(a)(2). The "overt acts" communication was a clear, correct statement of the law and repeated information already transmitted to the jury. *See United States v. Arriagada*, 451 F.2d 487 (4th Cir.). However, the statement from the foreman which was included in the message to the judge causes speculation. It said:

"Also could we have an instruction of 8 U.S.C. 1324(a)(2). I can't seem to find the specific sheet on this in the instructions."

The court, as mentioned, did not further instruct nor respond, but the statement was a flag which should have led to an inquiry including a hearing with counsel as to whether some instructions did not get to the jury room or whether more instructions were needed. This could very well have been one so omitted, as we now know that the instruction on inferences from a failure of a defendant to testify apparently did not get to the jury room. The jury indicated that it needed some guidance as apparently it did not have the written instruction it needed although it had others.

We must hold that the several communications with the jury by the trial judge constituted error.

■ The transmittal of exhibits to the jury is ordinarily a matter within the discretion of the trial court and will not be reversed in the absence of clear prejudice to the defendants. *United States v. Hines*, 696 F.2d 722 (10th Cir.); *United States v. Riebold*, 557 F.2d 697 (10th Cir.). The trial court may send all or part of the exhibits admitted into evidence to the jury before or after it has begun its deliberations. *Riebold; United States v. Downen*, 496 F.2d 314 (10th Cir.). In *Downen* we added a condition that submission of exhibits should be "accompanied by careful cautionary instructions." The court should take particular care if it chooses to submit only a portion of the exhibits that in so doing undue emphasis is not placed on that evidence. *United States v. Thomas*, 521 F.2d 76 (8th Cir.); *United States v. Downen*, 496 F.2d 314 (10th Cir.). *See United States v. Medina*, 552 F.2d 181 (7th Cir.). The trial court may send the exhibits to the jury *ex parte* without running afoul of Fed.R.Crim.P. 43. *Dallago v. United States*, 427 F.2d 546, 553 (D.C.Cir.). In the case before us the record is not clear as to what exhibits did go to the jury room, and it is not known whether a selection was made in response to the request of the jury.

An issue remains concerning an instruction to the jury which was directed to the fact that a defendant or defendants did not testify. The appellants urge that the instruction given was a variation from some accepted instructions on the point and was error.

The instruction given orally as to the consequences of a defendant not testifying was included in the following:

"The indictment or a formal charge against a defendant is not evidence of guilt. The defendant is presumed by the law, to be innocent. The law does not require a defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of a defendant not to testify."

The objection to this instruction by defendants was adequate under Fed.R.Crim.P. 30.

The defendants had at the instruction conference apparently been advised that the instruction would include a statement that the law does not compel a defendant to testify or that the defendant has a right to remain silent or not to testify. Such an instruction was not given. The defendants Perea requested the following:

"The law does not compel a defendant in a criminal case to take the witness stand and testify, no presumption of guilt may be raised, no inference of any kind may be drawn, from the failure of a defendant to testify."

(R. Vol. II, 311, 476.)

■ The defendants on the instruction issue urge that the instruction given was insufficient and incomplete for the reason that a statement should have been included more in the language of the Constitution to indicate that the defendant cannot be compelled to testify, or that he has the right not to testify in order that the source or nature of the right is indicated. Most stock instructions include such a phrase, and in our view it is important for an adequate description of defendants' rights and must be included should this case be retried.

The negative element or nature of the right in such an instruction was not discussed in *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241, although it arose from a state court trial wherein the defendant requested the following instruction:

"The [defendant] is not compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way."

The Supreme Court reversed on the trial court's refusal to give this instruction, but again discussed only the "inference" aspect, and thus *see Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and *Bruno v. United States*, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257. We do not take the holding in *Carter* that the instruction requested should have been given to include necessarily the "not compelled to testify" element. The Court did not comment on it, but it did not distinguish between the elements of compulsion and inference. The opinion does discuss as did *Lakeside* the compulsion aspect on the question whether an inference instruction must be given. We however are of the view, as indicated, that for an instruction on this point to be complete it should include the compulsion aspect.

■ There was an additional problem involved in this instruction issue. It appears that the above instruction given orally by the court was not included in the written instructions which went to the jury room. This presents a substantial question as to what emphasis in the jury's examination of the written instructions may have been given to the issue. This is an additional factor which leads us to the conclusion that this case must be reversed.

A separate issue is raised as to the court's granting of permission to the jury to take notes. The court early in the trial had an *ex parte* "discussion" with the jury concerning note taking by the jurors. The attorneys for defendants were not present and were not advised as to what took place.

It is not known what admonitions the judge gave to the jury. We considered the handling of note taking in *United States v. Riebold*, 557 F.2d 697 (10th Cir.). This had special reference to the discussion of notes taken before the case was submitted to the jury and general admonitions. We there emphasized the importance and need for the court to advise the jury on how note taking was to be done. The requirements in *Riebold* are described and there is no indication that they were followed.

■ The *ex parte* communications concern the right of the accused to be present during all stages of the trial. This is a fundamental right and "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353. *See Lewis v. United States*, 146 U.S. 370, 371, 372, 13 S.Ct. 136, 36 L.Ed. 1011. That right has been codified as Fed.R.Crim.P. 43, which provides that "[t]he defendant shall be present ... at every stage of the trial including the impaneling of the jury and the return of the verdict ...."

■ An *ex parte* communication by the trial judge with the jury in violation of Rule 43 may, of course, be harmless error. *Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1; Fed.R. Crim.P. 52(a). Whether the harmless error exception applies is a question to be determined case by case as to whether a defendant's "substantial rights" have been adversely affected. Courts have found the harmless error exception to apply when the trial judge has merely repeated an instruction that he had given in the defendant's presence. *United States v. Freed*, 460 F.2d 75 (10th Cir.); *Jones v. United States*, 299 F.2d 661 (10th Cir.). A reply to a legal question in "strict and exact conformity" with the charge previously given in the presence of the defendant and counsel has been held harmless error. *United States v. Arriagada*, 451 F.2d 487 (4th Cir.).

When the jury's request is tantamount to a request to be reinstructed courts have held that any communication between judge and jury must be held in open court with the defendant present. *United States v. Marken*, 457 F.2d 186 (9th Cir.); *United States v. Schor*, 418 F.2d 26 (2d Cir.); *Evans v. United States*, 284 F.2d 393 (6th Cir.). *Cf. Bustamante v. Eyman*, 456 F.2d 269 (9th Cir.).

■ In any event, the burden is on the prosecution to show the *ex parte* communication with the jury harmless error. As we said in *Jones v. United States*, 299 F.2d 661 (10th Cir.), "unless the record completely negatives any reasonable possibility of prejudice arising from such error," the conviction must be reversed. *United States v. Glick*, 463 F.2d 491 (2d Cir.); *United States v. Arriagada*, 451 F.2d 487 (4th Cir.); *Ware v. United States*, 376 F.2d 717 (7th Cir.). We have considered the proceedings leading to the recusal of a juror under the Confrontation Clause in *United States v. Baca*, 494 F.2d 424 (10th Cir.), and in *Ellis v. State of Oklahoma*, 430 F.2d 1352 (10th Cir.), and found no showing of prejudice. Here, as we have mentioned, the prosecution has not demonstrated under *Jones v. United States*, 299 F.2d 661 (10th Cir.), that the "record completely negatives any reasonable possibility of prejudice."

■ We need mention one other issue in this appeal. One of the defendants, Pineda-Vergara, had appointed counsel but on a motion by the prosecution the appointment was terminated on the grounds that he was "not ... indigent." Without commenting on the evidence supporting this finding, we note that 18 U.S.C. § 3006A(b) looks not to the indigency of the accused but whether he is "financially unable to obtain counsel." This standard was not applied by the magistrate nor at trial as it should have been. The trial judge did not conduct an inquiry on the point and the magistrate had applied the wrong standard.

For these reasons the judgment of the trial court as to each defendant is set aside and the cases are remanded to the trial court.