UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark CARTER, Defendant–Appellant.

No. 91–5032.

United States Court of Appeals,
Tenth Circuit.

July 20, 1992.

John S. Morgan, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Jenine Jensen, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the brief), Denver, Colo., for defendant-appellant.

Before ANDERSON and BRORBY, Circuit Judges, and CAMPOS,* District Judge.

* The Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation.

BRORBY, Circuit Judge.

After hearing direct testimony from a number of witnesses, a jury convicted Mr. Mark Carter of conspiring to distribute cocaine. On appeal, Mr. Carter challenges numerous evidentiary rulings and the trial court's ex parte response to a jury question. He also claims the trial court erred in sentencing. We affirm.

By way of background, several members of the conspiracy testified they and Mr. Carter were members of a gang, the Third World Crips, which sold two to three kilos of crack cocaine per week with most of the profits going to Mr. Carter.

## I

One of the prosecution witnesses was Cedric Scott. Mr. Scott testified he was a member of the Third World Crips; he was in the cocaine business; he knew Mr. Carter; and he previously pleaded guilty to aiding racketeering and received a three year prison sentence as part of a plea agreement to testify truthfully about Mr. Carter's participation in the conspiracy. Mr. Scott then began responding to questions in a way that obviously surprised the prosecutor. For example, Mr. Scott testified he was not aware Mr. Carter belonged to the Third World Crips and denied Mr. Carter had ever given him any cocaine to sell.

To refresh Mr. Scott's memory, the prosecutor handed Mr. Scott a copy of a police officer's report containing an interview between Mr. Scott and the officer. The prosecutor then asked Mr. Scott if he previously told the officer Mr. Carter was one of the leaders of the Third World Crips. Mr. Scott responded, "No." Mr. Scott denied receiving any threats concerning his testimony, and the jury was excused. The trial court ruled the government could impeach the witness, and defense counsel stated he had "no objection to the impeachment".

While the jury remained out, the prosecutor called an FBI agent who had interviewed Mr. Scott the week before trial. The agent testified Mr. Scott admitted receiving a telephone call from Mr. Carter's brother who promised Mr. Scott work with the Third World Crips upon his release. The agent testified Mr. Scott was afraid of the brother because Mr. Scott had once seen him tie someone to a light pole and set the person on fire. The agent also testified Mr. Scott admitted his statement to the police was correct but he "damned sure wasn't going to testify."

The jury returned, and the district court carefully instructed the jury, in part, as follows:

Ladies and gentlemen of the jury, please pay careful attention to what I'm going to tell you at this point. We have the witness Cedric Scott who has been called to give testimony and his testimony apparently conflicts with testimony urged by the United States that he had given at a prior time or a statement that he had made at a prior time. I'm going to allow the United States to attempt to impeach its own witness. That is, they may attempt to establish the authenticity or the *truthfulness* of the prior statement, the fact that Mr. Scott gave a prior statement to a police officer, Kay Orndorff, at a prior time. And I'm going to allow the United States to attempt to impeach him by other testimony that will attack his credibility here in court. Now, what you must be very concerned with is this. None of this testimony is to be taken against this defendant. In other words, no one is asking this jury to assume from any of this testimony that Mark Carter in any way attempted to influence the testimony of this witness because there is simply no testimony to that effect. You should not assume it from any testimony.

The process that I'm going to allow now deals with the plea agreement between the United States and this witness, the prior statements made by this witness and the credibility of the testimony given in court by this witness. It deals with the witness at this stage, it does not deal with this defendant or any charge against this defendant. So you are not to assume any imputing of this defendant, don't impute any guilt of this defendant by any communications that may or may not have been made to this wit-

ness or whether or not this witness is telling the truth. Does everybody understand that?

(Emphasis added.)

Mr. Scott was then recalled to the stand and testified he remembered the interview with the police officer. The prosecutor asked Mr. Scott a series of questions, such as: "Do you recall telling Officer Orndorff at the time of this interview ... that ... [Mr.] Carter fronted you four ounces of crack to sell?" And "Do you recall telling [the officer] ... you witnessed [Mr. Carter] collect money and distribute as much as 100 kilos of cocaine?" Mr. Scott denied the statements. Although defense counsel requested and received a running objection to the impeachment *process,* counsel did not object to specific questioning. On cross-examination, Mr. Scott testified Mr. Carter was not a member of the organization.

The prosecutor then called the police officer who conducted the interview, and she testified as to portions of the interview that contradicted Mr. Scott's testimony. Again, defense counsel offered no specific objections.

Mr. Carter now asserts reversible error occurred when Mr. Scott's prior statement was read twice to the jury under the guise of impeachment. Mr. Carter argues the government knew Mr. Scott was not going to testify consistently with his prior statements and the real purpose in calling Mr. Scott was not to impeach, but rather to place into evidence hearsay as substantive evidence. Mr. Carter also contends the evidence was in fact used as substantive evidence; the trial court failed to properly limit the evidence; and the jury should not have heard testimony that defendant's brother threatened the witness. Furthermore, Mr. Carter claims attempts to authenticate Mr. Scott's prior statement compounded the prejudice and the court's instructions were erroneous and inadequate.

■■■ Fed.R.Evid. 607 provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." The Advisory Committee Notes to Rule 607 comment " '[a] party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them.... If the impeachment is by a prior statement, it is ... excluded from the category of hearsay under Rule 801(d)(1).' " *Id.* (citing Ladd, *Impeachment of One's Own Witness—New Developments,* 4 U.Chi.L.Rev. 69 (1936); McCormick § 38; 3 Wigmore §§ 896–918). A witness' "prior statements are admissible only to impeach or discredit the witness and are not competent substantive evidence of the facts to which the former statements relate." *United States v. Eaton,* 485 F.2d 102, 105 (10th Cir.1973). The government may not introduce evidence of prior statements " 'under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible.' " *United States v. Miller,* 664 F.2d 94, 97 (5th Cir.1981) (emphasis in original); *see United States v. Peterman,* 841 F.2d 1474, 1479 (10th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989).

■■ The trial court properly allowed the cross-examination of Mr. Scott and properly admitted the police officer's testimony that reiterated statements allegedly made by the witness. Fed.R.Evid. 607 clearly allows any party to attack the credibility of a witness, *including the party who called the witness.* The police officer's testimony was admissible for impeachment purposes as a prior inconsistent statement. We note Mr. Carter made no claim that Mr. Scott's testimony was not inconsistent with his prior statement.

■■ We now turn to Mr. Carter's first claim, i.e., the prosecutor knew the witness would not testify in accordance with his earlier statement and the real purpose the prosecutor called Mr. Scott was to place his hearsay statement into evidence as substantive evidence.

We commence this analysis by noting the district judge was not confronted with this question as trial counsel made no such objection. Counsel raises this argument for the first time on appeal. Although the plain error standard of review controls, we find no error.

When we review a trial court's decision to admit or exclude evidence, we do so by applying an abuse of discretion standard. *United States v. Harmon,* 918 F.2d 115, 117 (10th Cir.1990). We will reverse for an abuse of discretion only after we develop a "definite and firm conviction [the trial court] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

Limits exist on the use of Rule 607 to impeach a witness. One such limit is that a witness may not be called and then impeached if the underlying purpose is to utilize hearsay evidence as substantive evidence against the defendant. *See United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984) (and cases cited therein); *United States v. Coppola,* 479 F.2d 1153, 1157–58 (10th Cir.1973) (citing 3A Wigmore, *Evidence* §§ 906, 1018 (Chadbourn rev. 1970)). Accordingly, we must examine the purpose of the challenged testimony here.

Appellate courts are reluctant to find that a party called a witness for an improper purpose. The reason is simple. Evaluating the purpose of counsel's decision to call a witness is akin to pushing a string—neither is easy. Here, the government interviewed Mr. Scott the week before trial and knew he feared retaliation. The government also knew the witness stated he was not going to testify due to his fear of retaliation. At the time, the witness was in prison and was also fearful authorities could not protect him. When a prosecutor faces such circumstances, many questions arise. Will the formality of the courtroom, the oath, and the penalties of perjury change the witness' decision? What is the importance of the expected truthful testimony? What is the importance of allowing witness intimidation to succeed? Any experienced trial attorney has encountered a witness who has changed his testimony between the final interview and trial. Counsel seldom knows with certainty what a witness will relate once on the witness stand. However, an attorney is entitled to assume a witness will testify truthfully. For these reasons, courts should find a party called a witness for an improper purpose only where the trial record establishes clearly and unequivocally the circumstances showing an improper purpose existed. The existence of such circumstances may at least be doubted if counsel failed to recognize them during trial.

We do not find here that the government called the witness for an improper purpose. Once Mr. Scott's intention became clear, a bench conference was held and explanation was made. An evidentiary hearing out of the jury's presence followed. The trial court patiently and thoroughly explained the ramifications of perjury to the witness. The jury returned, and again the witness gave totally inconsistent answers. Mr. Carter offers no evidence the government called the witness for an improper purpose. A statement made by a witness prior to trial that he is fearful and will not testify is not sufficient to establish an improper purpose in invoking Rule 607.

Having examined the purpose of the witness' testimony, we turn our attention to the trial court's instructions to the jury. We quoted at length the court's initial instructions. In addition, the trial court again instructed the jury at some length the next day. The trial court specifically advised the jury "to totally disregard [the witness' inconsistent testimony] as any evidence against this defendant." During closing instructions, the jury was again so instructed. Finally, during deliberations, the jury inquired concerning Mr. Scott's testimony, and the trial court twice more, with emphasis in writing, advised the jury it could not consider the evidence as evidence of Mr. Carter's guilt.

The trial court clearly, expressly, specifically, and repeatedly gave the jury limiting instructions. We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions. *Ellis v. Oklahoma,* 430 F.2d 1352, 1356 (10th Cir.1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). The entire weight of our legal system rests

upon the shoulders of the jurors. This court will not speculate whether jurors refused to abide by the trial court's instructions or whether jurors are illiterate or incapable of following instructions. Counsel who urge this court to find jurors unwilling, unable, or incapable of following a trial court's instructions bear a heavy burden of persuasion.

Mr. Carter argues the trial court's initial instructions were erroneous in that the jury was told the government would be attempting to establish "the truthfulness of the prior statement." Mr. Carter acknowledges no objection was made and asserts this amounts to plain error. Mr. Carter attempts to bolster this argument by citing one of the juror notes that asked if they could consider the testimony of the police officer "regarding the questioning of Cedric Scott ... [o]r is this part of Perjury Proceeding."

The law is clear. The district court must instruct the jury that evidence of a prior statement may never be considered as evidence or proof of any such statement. Upon receipt of this question, the trial court instructed the jury: "You can consider such testimony *only* in evaluating the credibility of Cedric Scott. You cannot consider it as *any* evidence of the guilt of the defendant." (Emphasis was placed in the instruction by the trial court prior to delivery to the jury.)

An hour later, the jury again sent a query to the trial court asking: "Can we use any of Cedric Scott's testimony with regard to the case against Mark Carter?" The trial court's written response was: "Yes, you may consider his in-court testimony as evidence, but you may not consider his prior out-of-court statements as evidence against Carter."

Mr. Carter cites the jury's questions as proof the jury misunderstood or was confused by the instructions. To the contrary, the jury's questions show it fully understood the court's instructions. To the extent the trial court's initial instruction may have been erroneous or may have been inconsistent, we fail to see how it constitutes plain error. The trial court repeated-

ly and unequivocally issued correct instructions. The government's evidence of guilt was overwhelming. The defense presented no evidence. Any error existing in the initial jury instruction prior to the receipt of the witness' testimony was therefore harmless.

The phrase taken out of context by Mr. Carter in the initial instruction may have been inaccurate; however, looking at the balance of the initial instruction and the remaining instructions, it is clear the trial court accurately and clearly instructed the jury as to the applicable law.

## II

■ After the jury began its deliberations, it sent the following note to the judge: "Regarding [police officer] Kay Orendorf's [sic] second testimony. Jury would like to know. Can we considered [sic] the second testimony of Officer Kay Orndorf's [sic] regarding the questioning of Cedric Scott in the interview with Officer Orndorf [sic] in 1989? Or is this part of Perjury Proceeding?" Acting ex parte, the trial court sent this response: "You can consider such testimony *only* in evaluating the credibility of Cedric Scott. You cannot consider it as *any* evidence of the guilt of the defendant." (Emphasis added by the trial court.

About an hour later, the trial court notified the attorneys of the jury's note, explaining it "came during the noon hour and neither attorney was available and I wanted to get an answer to the jury quickly." Defense counsel made a rambling objection, which we quote in its entirety:

I must again affirm the defendant's point in this matter that the entire proceedings were beyond the scope of what was to be within the jury's ear. The question asked regarding the questioning of Cedric Scott. Again, I must state that during the proceedings the defense (sic) allowed the state, the United States Attorney, to lead his witness, to assume facts that weren't in evidence only for the hearing regarding what was understood, and I believe the question here by the jury suggests that it understood that

it was either a perjury or a breach of a plea agreement. It assumed facts that never have been entered into evidence and there was no authentication of the document which was read and was used as a leading tool for Ms. Orndorff. To consider her testimony then would be greatly prejudicial because the manner and the questions relate specifically to evidence that had not been previously entered into this court and would be again overly prejudicial beyond the probative value of admitting her testimony. The trial court overruled the objection.

Mr. Carter now asserts this action violated his Sixth Amendment right to assistance of counsel and his right to personal presence at all critical trial stages.

A reading of defense counsel's objection reveals no objection to the trial court's ex parte action. Instead, counsel objected only to the instruction's content, specifically challenging the district court's response that the jury could "consider such testimony *only* in evaluating the credibility of Cedric Scott." We therefore review the matter only for plain error.

■■■■ The right of the accused to be present during all critical stages of the trial is basic and fundamental. *Rushen v. Spain*, 464 U.S. 114, 117, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983); *United States v. Washita Constr. Co.*, 789 F.2d 809, 820 (10th Cir.1986) (citing *Spain*, 464 U.S. 114, 104 S.Ct. 453). This basic right is further protected by Fed.R.Crim.P. 43 which requires the presence of the defendant "at every stage of the trial." *See Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975). A question from the jury must be answered in open court and only after providing counsel an opportunity to be heard. *Id.; United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir.1984). We generally presume prejudice any time an improper ex parte communication occurs between a juror and the trial judge. *United States v. McDonald*, 933 F.2d 1519, 1524 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). A trial court's considerate desire to avoid keeping a jury

waiting is not a sufficient reason to deprive a defendant of his dual right to be present and to be heard. We hold Constitutional error occurred.

■■■ Constitutional error does not necessarily dictate reversal or a new trial, however. *Id.* at 1525. In the absence of a proper objection at trial, we must first conduct a plain error analysis. *Id.*

■■■ When conducting a plain error analysis the reviewing court considers the trial record as a whole, *id.* at 1524, to determine if the error " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). The government bears the burden to show the trial court's ex parte communication with the jury was harmless error. *McDonald,* 933 F.2d at 1524. To avoid a new trial under the plain error analysis, the record must completely " 'negative[ ] any reasonable possibility of prejudice arising from such error.' " *de Hernandez,* 745 F.2d at 1310 (quoting *Jones v. United States,* 299 F.2d 661, 662 (10th Cir.), *cert. denied,* 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962)).

Mr. Carter asserts he was prejudiced "because the court's answer to the jury was inadequate." However, the trial court's response simply reiterated its previous instruction, directing the jury to "consider such testimony *only* in evaluating the credibility of ... Scott [and not to] consider it as *any* evidence of the guilt of the defendant." The trial court's response was plain, simple, concise, responsive, complete, and accurate. We conclude the response was not inadequate. We further note the instruction was substantially identical to the court's previous jury instructions given in the presence of Mr. Carter and his counsel. This fact alone could render the error harmless. *United States v. Freed,* 460 F.2d 75, 78–79 (10th Cir.1972).

Having reviewed the record as a whole, we conclude the trial court's ex parte communication with the jury was harmless er-

ror. The evidence of guilt was overwhelming and the trial court's response was accurate. No reasonable possibility exists that Mr. Carter suffered any prejudice as a result of the trial court's error.[1]

### III

██ During direct examination, a police officer stated she saw Mr. Carter six months earlier in the federal courtroom in Dallas, Texas. The prosecutor asked what name Mr. Carter used at that time; the officer responded, "Bradley Lennox." Defense counsel made no objection to the question or to the response.

Later, when asked why police destroyed the illegal drugs seized in the conspiracy investigation, the officer responded: "[W]e had had the case open for quite some time and Mr. Carter and Ms. McCoy were fugitives so we went ahead and destroyed it after three years." Again, defense counsel made no objection to the question or to the response.

Mr. Carter asserts the trial court erred in permitting this testimony about Mr. Carter's use of an alias, his status as a fugitive, and his presence at another judicial proceeding. Mr. Carter claims evidence of other crimes, wrongs, or acts is not admissible under Fed.R.Evid. 404(b) to prove his character in order to show he subsequently acted in conformity therewith.

Fed.R.Crim.P. 52(a) directs that any error that "does not affect substantial rights shall be disregarded." Assuming, but not holding, the trial court should have excluded the evidence under Fed.R.Evid. 404(b), we fail to see how its admission would have impaired the jury's resolution of Mr. Carter's guilt or innocence. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (an otherwise valid conviction should not be set aside if error was harmless beyond a reasonable doubt). The evidence of Mr. Carter's guilt is not only overwhelming, it is unrefuted. Witness after witness testified

as to his guilt. Mr. Carter fails to persuade this court that substantial rights were affected. We remain convinced the error, if it occurred, was harmless.

### IV

██ Mr. George Anderson testified as to Mr. Carter's guilt, describing various illicit drug transactions and Mr. Carter's high standing in the crack organization's hierarchy. Mr. Anderson testified that on one occasion he and Carmen McCoy traveled to Los Angeles with $30,000 and Ms. McCoy "handed the money to [a man named] Vince." However, on cross-examination, Mr. Anderson testified he saw Ms. McCoy give the money to Mr. Carter. The following then occurred:

Q. ... You stated that Carmen McCoy brought the money and gave it to Mark Carter, is that correct?

A. Right.

Q. Do you remember yesterday saying that Carmen McCoy brought the money and gave it to Vincent Mizzelli?

A. No.

Q. You can't remember what you said yesterday?

PROSECUTOR: Your Honor, I object. He didn't say that.

THE COURT: The objection will be sustained.

Mr. Carter argues the court denied him the right to confront witnesses on cross-examination by not allowing him to pursue this line of questioning.

Mr. Carter's assertion warrants minimal discussion. The question bordered upon being both argumentative and a comment on the evidence. The witness was asked about a specific answer given the previous day. Defense counsel's question implied something more. This testimony is an example of why an appellate court reviews a trial court's ruling on exclusion of evidence under an abuse of discretion standard. The trial court sits in a far better position

---

1. This court expresses its concern that trial courts may read this opinion as approving ex parte communications with juries or jurors. We do not. A trial court must conscientiously

attempt to avoid such procedures. Neither expediency nor the simplicity of the jury question should be regarded as reason to deprive defendant of the opportunity to be heard.

to resolve disputes over the tone of examination than we do looking at the lifeless pages of a transcript. The prosecution objected because it believed defense counsel's question inferred the witness could remember none of his previous day's testimony. Defense counsel felt the trial court deprived him of his right to cross-examine. A careful reading of the record shows the trial court did not prevent the defense from pursuing the conflicting testimony; it merely steered defense counsel away from a potentially improper style of questioning. Defense counsel did not question the trial court's ruling. We believe the trial court's decision fell squarely within the bounds of proper discretion.

■ Mr. Carter next complains he was denied his right to fully cross-examine Ms. Gilbert Reynolds, a government witness. On direct examination, Ms. Gilbert had little to say. On cross-examination, counsel questioned her regarding her plea agreement, her credibility, and the credibility of other witnesses. Mr. Carter's counsel claims the trial court ordered him "not to pursue it any further." Counsel's assertion is misleading. We repeat the colloquy that occurred at the bench:

MR. MEDINA: Your Honor, all I'm doing is doing exactly what the prosecution is. She's a sister, aunt, mother of known conspirators and the fact that she is doesn't make her any more or less guilty than any other person.

THE COURT: I understand.

MR. MORGAN: That's not the question.

THE COURT: He's concerned about your questions to her concerning any crimes that she may have committed.

MR. MEDINA: I will not bring—the limit of the questions were as to those that were presented.

THE COURT: What you can do, you can deal with the relationships but it's been testified on direct and cross that she's a relative of all of these folks and she's the aunt and the sister and the mother of people involved in this conspiracy and that's before the jury now. And

you are not to pursue it any further and you don't option to really pursue any further any charges that could have been brought against her.

MR. MEDINA: I understand.

THE COURT: And I think we've pretty well covered the relationships but you may inquire further in any area that you deem appropriate to protect your client.

Mr. Carter asserts this amounted to a prohibition against further cross-examination and requests a new trial.

What Mr. Carter fails to perceive is that defense counsel's questions placed the witness in the position of being forced to violate her Fifth Amendment right against self-incrimination. Notwithstanding this fact, the trial court clearly directed counsel to "inquire further in any area that you deem appropriate to protect your client." [2] No error occurred.

## V

■ At sentencing, the trial court imposed a fine of $10,000 and sentenced Mr. Carter to fifteen years in prison pursuant to laws in effect prior to the Sentencing Guidelines.

In accordance with then existing law, a sentence within the statutory limits was invulnerable to attack on appellate review. *United States v. Prazak*, 623 F.2d 152, 155 (10th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). The maximum fine authorized by the statute in question, 18 U.S.C. § 3623(a)(1), (3) was $250,000. A sentencing court was not then required to make specific findings pursuant to 18 U.S.C. § 3553. The trial transcript reveals Mr. Carter received enormous sums of money from his crack cocaine business. In short, Mr. Carter's argument lacks merit.

## Conclusion

The judgment and sentence are AFFIRMED.

---

**2.** Appellate counsel was not trial counsel.