UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 10/3/96**

BISWELL STORES INC.,

      Plaintiff-Appellant,

v.

INDIAN NATIONS
COMMUNICATIONS OF CUSHING
INC., doing business as Cushing Daily
Citizen; ESCOTT'S INC.,

      Defendants-Appellees.

No. 95-6179
(W.D. of OK)
(D.C. No. CIV-92-1287-M)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BRISCOE**, and **MURPHY**, Circuit Judges.

Plaintiff brought this civil action for violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, alleging conspiracy to monopolize, attempt to monopolize, and actual monopolization. Plaintiff further alleged that defendants' actions constituted fraud, breach of contract, conspiracy to commit price

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

discrimination, and tortious interference in violation of Oklahoma state law. The district court granted summary judgment on plaintiff's monopolization claim under section 2 of the Sherman Act and on its state law claim for conspiracy to commit price discrimination. After a jury trial, a verdict was rendered in favor of defendants on plaintiff's remaining claims.

On appeal, plaintiff argues that the district court erred as follows: by permitting defense counsel to cross-examine one of plaintiff's witnesses regarding an indictment pending against him; by excluding certain rebuttal testimony of plaintiff's expert witness; and by granting summary judgment on plaintiff's monopolization claim. Because plaintiff's substantial rights were not affected by the cross-examination of its witness and because the court did not err by excluding the rebuttal testimony of plaintiff's expert witness, we decline to set aside the jury's verdict. We reverse the grant of summary judgment on plaintiff's claim of monopolization, however, because the district court granted summary judgment on an issue it raised *sua sponte* without providing plaintiff an opportunity to be heard.

This court reviews the district court's decision to admit or exclude evidence for an abuse of discretion. *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992), *cert. denied*, 507 U.S. 922 (1993). If there is error in the admission or exclusion of evidence, we will set aside a jury verdict only if the error

prejudicially affects a substantial right of a party. *See* Fed. R. Civ. P. 61; Fed. R. Evid. 103(a); *Beacham v. Lee-Norse*, 714 F.2d 1010, 1014 (10th Cir. 1983). "Where the verdict more probably than not was untainted by the error, the error is harmless and a new trial is not required." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1252 (10th Cir. 1988) (footnotes omitted). When a witness who is the subject of improper impeachment has already been effectively impeached, it is less likely that a party's substantial rights are affected. *United States v. Drake*, 932 F.2d 861, 867 (10th Cir. 1991).

Plaintiff Biswell Stores, Inc. began operating a supermarket in Cushing, Oklahoma, in October 1990. At that time, the only other supermarkets in Cushing were owned by defendant Escott's. From December 1990 until March 1992, both Biswell and Escott's advertised in the *Cushing Daily Citizen*, a local newspaper owned by defendant Indian Nations. In the court below, plaintiff claimed that Rick Clark, the publisher of the *Cushing Daily Citizen*, leaked Biswell's upcoming advertisements to Harry Escott, the owner of Escott's, and that Escott's used this information to undercut Biswell's advertised prices.

Plaintiff first argues that the district court erred by permitting counsel for Indian Nations to cross-examine its witness, Fred Jones, regarding an indictment pending against him. Jones had testified that he saw Harry Escott go into Rick

Clark's office at the *Cushing Daily Citizen* while proof sheets for both Biswell's and Escott's advertisements were laid out on Clark's desk.

Assuming without deciding that the district court erred by permitting Indian Nations's counsel to cross-examine Fred Jones regarding the indictment pending against him,[1] this court determines that plaintiff's substantial rights were not affected. In addition to a curative instruction given by the court at plaintiff's request, the record indicates that plaintiff's expert, Jim Snyder, testified that the similarities between Escott's and Biswell's pricing could not have occurred without "leakage." Snyder's testimony supports Biswell's contention that Escott's had access to Biswell's advertisements before they were published and undermines Biswell's claim that Jones's testimony was the "lynchpin" of its case. Rather than a lynchpin, it was cumulative.

The record further indicates that Jones's credibility had already been impeached by his own testimony and the testimony of other witnesses.

---

[1]*See Tafoya v. United States*, 386 F.2d 537, 539 (10th Cir. 1967) (holding that only previous convictions, and not previous acts of misconduct for which a witness was charged but not convicted, may be used to impeach credibility), *cert. denied*, 390 U.S. 1034 (1968). *But see United States v. Miller*, 907 F.2d 994, 1001-02 (10th Cir. 1990) (suggesting that *Tafoya* may not bar the use of criminal charges for which no conviction was obtained to impeach a witness "because Fed. R. Evid. 608(b), adopted subsequent to [*Tafoya*], would not require a conviction for purposes of impeachment, if, in the discretion of the court, the cross-examination of the witness as to the misconduct concerned the witness's credibility").

Specifically, Jones's credibility was impeached when he testified that he improperly collected unemployment benefits while he was working for the *Cushing Daily Citizen*. His credibility was further impeached by the testimony of Shawna Johnson, a former employee of Indian Nations, and by the testimony of Priscilla Hancock, the former publisher of the *Show & Tell Times*, a free advertising circular distributed in Cushing. Johnson testified that she didn't find Jones "very trustworthy or honest," and Hancock testified that Fred Jones's reputation in the community was "that he is not truthful and that he is unreliable." Under these circumstances, "the verdict more probably than not was untainted by error." *U.S. Indus.*, 854 F.2d at 1252.

Plaintiff next challenges the district court's exclusion of rebuttal testimony by its expert witness, Jim Snyder. At trial, Harry Escott testified in defendants' case-in-chief that differences in the promotional allowances, including rebates, offered by Pepsi explained the different prices Escott's charged for Pepsi products in its stores in Cushing and Bristow. The district court thereafter refused to permit Snyder to testify that Escott's promotional programs in Cushing and Bristow were the same on the ground that Snyder's proffered testimony duplicated testimony he gave in plaintiff's case-in-chief. On appeal, plaintiff argues that the district court erred because Snyder's earlier testimony concerned prices generally, not promotional allowances.

-5-

When rebuttal testimony is cumulative and repetitive of issues that have been raised during plaintiff's case-in-chief, the district court is well within its discretion in excluding it. *Marsee v. United States Tobacco Co.*, 866 F.2d 319, 324 (10th Cir. 1989). In this case, the record establishes Snyder had already testified that Pepsi's promotional programs for Escott's were the same in Cushing and Bristow:

> Q: Do you know, based upon your own review in this case and your own expertise, whether Pepsi prices and promotions . . . were the same in Cushing as they were in Bristow?
>
> A: Yes, I do.
>
> Q. What is the answer to that?
>
> A. They were the same.
>
> Q. So there were not different prices to Mr. Escott between what he would have paid in Bristow and Cushing?
>
> A. No.
>
> Q. How do you know that?
>
> Q. I contacted our local Pepsi distributor and I posed him the question.

Snyder's proposed rebuttal testimony was that after he testified, he contacted a second Pepsi distributor regarding Escott's promotions and "found that [Pepsi's] promotional programs for Escott were exactly the same in Cushing and Bristow." This was precisely the same testimony he gave in Biswell's case-

in-chief.  Under these circumstances, we cannot say that the district court abused its discretion when it excluded Snyder's rebuttal testimony on the ground that it was duplicative of his earlier statements.

Finally, plaintiff challenges the district court's grant of summary judgment to Escott's on its monopolization claim.[2]  "The offense of monopoly under § 2 of the Sherman Act has two elements:  (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  In this circuit, monopoly power is defined as the ability both to control prices and exclude competition.  *Tarabishi v. McAlester Regional Hosp.*, 951 F.2d 1558, 1567 (10th Cir. 1991), *cert. denied*, 505 U.S. 1206 (1992).  The district court held that Cushing was the relevant market and that plaintiff had failed to present evidence of Escott's ability to control prices there.  On appeal, plaintiff argues that it lacked notice and an opportunity to respond to this argument because the district court granted summary judgment on the issue *sua sponte*.

---

[2]Plaintiff's claim of actual monopolization was brought against Escott's only.

A district court cannot grant summary judgment to a defendant on an issue not presented in the defendant's motion for summary judgment without notice to the plaintiff. *Graham v. City of Oklahoma City*, 859 F.2d 142, 145 (10th Cir. 1988). Escott's contends that it raised the issue of its ability to control prices in Cushing by arguing generally that Biswell had failed to establish the first element of its claim under section 2 of the Sherman Act.

The record indicates, however, that Escott's did not dispute Biswell's contention that Escott's had the ability to control prices and exclude competition in Cushing, which Biswell claimed was the relevant market. Rather, Escott's argued only that the relevant market extended beyond Cushing and that Biswell had failed to present evidence of Escott's ability to control prices and exclude competition in the larger relevant market. Accordingly, when the district court granted summary judgment on the ground that Biswell had failed to present evidence of Escott's ability to control prices in Cushing, it relied on an issue not raised by the defendant. Because Biswell was not given notice or the opportunity to present evidence on this issue, we reverse the grant of summary judgment on the monopolization claim.[3]

_____

[3]At oral argument, a question from the bench inquired whether it would be anomalous to permit plaintiff to pursue its claim of actual monopolization on remand when the jury found no conspiracy or attempt to monopolize. A jury determination that defendant lacked the specific intent necessary to maintain a claim for attempt or conspiracy to monopolize may appear to be inconsistent with

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings on plaintiff's monopolization claim.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

the pursuit on remand of a monopolization claim, which requires a showing that defendant willfully acquired or maintained monopoly power. Because only general intent, not specific intent, is an element of monopolization, however, a defendant may be liable for actual monopolization but not conspiracy or attempt to monopolize. *See Aspens Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1520 n. 14 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985); *Olsen v. Progressive Music Supply, Inc.*, 703 F.2d 432, 438 (10th Cir.), *cert. denied*, 464 U.S. 866 (1983). Furthermore, a conspiracy to monopolize claim requires the added and obvious element of a combination or conspiracy to monopolize. *Olsen*, 703 F.2d at 438.