(7 P.3d 300)
No. 82,805

CITY OF COLBY, KANSAS, *Appellee,* v. ROSS R. CRANSTON, *Appellant.*

Opinion filed May 12, 2000.

*Michael S. Holland* and *Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Michael D. Irvin*, special prosecutor for the City of Colby, of St. Marys, for appellee.

Before ELLIOTT, P.J., BEIER, J. and PADDOCK, S.J.

BEIER, J.: Ross R. Cranston was convicted in the Municipal Court of Colby, Kansas, for driving under the influence, obstruction of legal process, and failure to maintain a single lane in violation of the Colby Municipal Code. On appeal to the district court, a jury found him guilty of the same offenses. On subsequent motion, the district court vacated the conviction for obstruction of legal process.

On appeal, defendant raises three issues: (1) Did the district court err by failing to give his proposed jury instruction? (2) Was there sufficient evidence to support his conviction of driving under the influence? (3) Did the trial court err in admitting hearsay testimony in violation of his Sixth Amendment right of confrontation? We have considered each of these issues and affirm.

The essential facts are these: On July 25, 1996, defendant was pulled over at 12:35 a.m. after a Colby police officer observed defendant's vehicle make a wide left turn, drift over the line dividing

two southbound lanes and suddenly jerk back at least three times, and drift over the fog line onto the right shoulder and then jerk back.

Defendant admitted to the officer he had consumed "a couple of beers," and the officer noticed that defendant's eyes were blood-shot and glassy and that he smelled of alcohol. A back-up officer arrived and activated a tape recorder. The tape recorder captured a later exchange when defendant refused to take field sobriety tests and struggled with the officers, and his wife and passenger, Dana Cranston, leaned out of the driver's side window and yelled at him to cooperate. Defendant was ultimately taken to the station and tested. At 1:58 a.m., his breath alcohol concentration was measured at .129, well in excess of the statutory limit of .08.

### Jury Instruction

In considering defendant's first issue regarding his requested jury instruction, we are

"required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]" *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998).

The district court gave the following instruction from PIK Crim. 3d 52.13 as Instruction No. 6: "You must not consider the fact that the defendant did not testify in arriving at your verdict."

Defense counsel objected to this instruction and requested the following instruction:

"It is the constitutional right of a defendant in a criminal trial that he may not be compelled to testify. The decision as to whether he should testify is left to the defendant acting on the advice and assistance of his attorney. You must not draw any inference of guilt from the fact he did not testify, and this fact must not be discussed by you or enter into your deliberations in any way. In deciding whether or not to testify, a defendant may choose to rely on the state of the evidence or upon the failure, if any, of the prosecution to prove every essential element of the charge against him."

At trial, defendant argued Instruction No. 6 was constitutionally inadequate to inform the jury that he could not be compelled to

testify. The district court overruled the objection. Although the remainder of the instructions given at trial included the concept of the State's burden of proof, they nowhere stated that defendant could not be compelled to testify or that he had a constitutional right not to testify.

On appeal, defendant argues that the Fifth Amendment required the district judge to give his requested instruction to ensure the jury understood that he could not be compelled to speak and that his silence could not be used against him. Defendant relies on the United States Supreme Court's decisions in *Griffin v. California*, 380 U.S. 609, 14 L. Ed 2d 106, 85 S. Ct. 1229, *reh. denied* 381 U.S. 957 (1965), and *Carter v. Kentucky*, 450 U.S. 288, 67 L. Ed. 2d 241, 101 S. Ct. 1112 (1981), as well as the Tenth Circuit's interpretations of those decisions in *U.S. v. De Hernandez*, 745 F.2d 1305 (10th Cir. 1984), and *U.S. v. Gomez-Olivas*, 897 F.2d 500 (10th Cir. 1990).

In *Griffin*, the trial court told the jury that a defendant has a constitutional right not to testify, but the jury could draw adverse inferences from the defendant's failure to explain or deny by his testimony any evidence or facts against him. The *Griffin* court held that the "comment rule" violated the defendant's constitutional rights, because the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615.

In *Carter*, the trial judge refused to give a jury instruction explaining that defendant was not compelled to testify and that his failure to testify could not be used to infer guilt. The Kentucky Supreme Court had ruled that the requested instruction would have required the trial judge to "comment on" the defendant's failure to testify in violation of a statute prohibiting such comment. *Carter*, 450 U.S. at 295. The *Carter* court held: "[T]he Fifth Amendment requires that a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." *Carter*, 450 U.S. at 300.

In *De Hernandez*, 745 F.2d 1305, the Tenth Circuit examined *Griffin* and *Carter* and expanded upon them, ruling that, when asked, a trial court must not only tell a jury that it can draw no

adverse inference from a defendant's silence but that the defendant cannot be compelled to testify. "We . . . are of the view . . . that for an instruction on this point to be complete it should include the compulsion aspect." 745 F.2d at 1309.

The Tenth Circuit followed up on *De Hernandez* in *Gomez-Olivas*, 897 F.2d 500, in which it reaffirmed the dual requirements of *De Hernandez* and emphasized that the instruction should always be preceded by a defense request. In the absence of such a request, the panel said, a trial judge could torpedo a defendant's conscious tactical decision to avoid any mention of his or her silence in the face of accusation. See 897 F.2d at 502.

The First Circuit also has recognized the distinction between compulsion language and adverse inference language in jury instructions. In *U.S. v. Brand*, 80 F.3d 560 (1st Cir. 1996), the court was called upon to review an instruction that included compulsion language but excluded adverse inference language. It stated in pertinent part:

"Our question is whether instructing that the government has the burden of proof and that defendant does not have to testify or present evidence adequately communicates that no adverse inferences may be drawn from the fact that he does not testify. . . . A jury might well think that a defendant's right not to testify means merely that he cannot be called as a witness, leaving it to draw such conclusions from his silence as it felt warranted. An instruction not to consider his failure to testify precisely forbids drawing inferences. [Citation omitted.] Here, however, the court mentioned nothing beyond the defendant's right not to testify or present evidence. *Carter v. Kentucky* makes clear that, once request for a no-adverse-presumption instruction has been made, the 'full and free exercise' of the constitutionally guaranteed privilege against self-incrimination *requires more than instruction on the right not to testify and to be presumed innocent until proven guilty*. [Citations omitted]." (Emphasis added.) 80 F.3d at 567.

This language from *Brand* makes clear that, like the Tenth Circuit, the First Circuit recognizes the constitutional necessity of instructing the jury on both compulsion and adverse inference, once such instruction has been requested by a defendant.

For its part, the Kansas Supreme Court has not addressed the exact issue before us. Although it has approved the wording of the PIK instruction given here, its decisions have focused on the propriety of giving the instruction without a request or objection from

the defendant or when the defendant objected that the instruction would comment impermissibly on his or her silence. See *State v. Goseland,* 256 Kan. 729, 737-39, 887 P.2d 1109 (1994) (no request or objection; instruction not clearly erroneous); *State v. Perry,* 223 Kan. 230, 236, 573 P.2d 989 (1977) (instruction given over defendant's objection; not prejudicial under facts of case but preferable that trial courts not give instruction when only one defendant on trial and defendant objects). See also *Lakeside v. Oregon,* 435 U.S. 333, 340-41, 55 L. Ed. 2d 319, 98 S. Ct. 1091 (1978) (giving of adverse instruction over defendant's objection does not violate privilege against self-incrimination). These cases simply have not gone to the next step in the analysis, recognizing both the compulsion and adverse inference components in the instruction considered in *Carter.*

Although we are not bound to follow the federal circuit courts in their interpretations of United States Supreme Court precedents, we find the reasoning of the Tenth and First Circuits persuasive and conclude that, when presented with the opportunity, our Supreme Court would see the issue as we do. See *Harder v. Towns,* 1 Kan. App. 2d 667, 669, 573 P.2d 625 (1977), *rev. denied* 225 Kan. 844 (1978). As *Brand* put it:

"The Fifth Amendment guarantees a criminal defendant *both* the right to remain silent *and* that no adverse inferences may be drawn from his exercise of this right. [Citation omitted.] Further, 'when the defendant makes a timely request that a prophylactic instruction be given . . . [the court] has the constitutional obligation . . . to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify.' " *Brand,* 80 F.3d at 567 (citing *Carter,* 450 U.S. at 305). (Emphasis added.)

We hold that a trial court runs afoul of a criminal defendant's privilege against self-incrimination when it refuses, after a defendant's request, to instruct the jury not only that it may draw no adverse inference from defendant's silence but that the defendant has a right not to be compelled to testify. Because the PIK instruction given as Instruction No. 6 covered only the adverse inference component and not the compulsion component, as requested by Cranston, the trial court committed error. Although we believe the brevity and clarity of the instruction requested by defendant could

be enhanced, it correctly included both the compulsion and adverse inference elements required.

Our next inquiry focuses on whether the trial court's instruction error was harmless. See *U.S. v. Flores*, 63 F.3d 1342, 1376 (5th Cir. 1995) (*Carter* instruction error subject to harmless error standard). Because we are convinced that the evidence against Cranston was direct and overwhelming, as further discussed below, we are confident he would have been convicted regardless of the error. Cranston is not entitled to reversal on this issue.

### Sufficiency of the Evidence

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

Cranston takes the position that the city code section governing driving under the influence requires the State to prove that the alcohol concentration in his breath *while he was driving* was .08 or more. Evidently he believes that the test must be conducted while he is behind the wheel. As we have previously observed, "statutes should be construed to avoid unreasonable results." *Wells v. Anderson*, 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983). In our view, Cranston asks us to arrive at an unreasonable result.

Defendant was convicted under Section 30(a)(2) of the Colby Municipal Code, which is substantially similar to K.S.A. 1999 Supp. 8-1567(a)(2). The state statute provides that "[n]o person shall operate or attempt to operate any vehicle within this state while: . . . (2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more." It is a "per se" violation of this statute if an individual's breath alcohol test registers .08 or more, as measured within 2 hours of operating a vehicle.

"The legislative directive is clear. To obtain a conviction for a per se violation under K.S.A. 8-1567(a)(2), the State must show the alcohol concentration was

tested *within* two hours of the last time a defendant operated or attempted to operate a vehicle. Further, our legislature has expressly provided in K.S.A. 8-1567(a)(1) that an alcohol concentration test administered two hours or more after a defendant operated or attempted to operate a vehicle may be competent evidence to support a conviction under that subsection." *State v. Pendleton*, 18 Kan. App. 2d 179, 185, 849 P.2d 143 (1993).

There is no dispute in this case regarding the results of the test administered on Cranston within 2 hours of his apprehension. This evidence alone was sufficient to support his conviction. In addition, the jury heard testimony from the arresting officer about his observations of defendant's appearance and odor at arrest. The jury heard the tape of the defendant being arrested and his wife yelling. The jury heard about the defendant's and his wife's admissions. We consider this compilation of evidence not merely sufficient but direct and overwhelming.

### Admission of Passenger's Statement

The court allowed Officer Sitton to testify about statements made by Dana Cranston over defendant's objection. Officer Sitton testified that he asked Dana if she could move defendant's vehicle, and she responded that she probably should not be driving because she had also been drinking. At the time, the City claimed this was not hearsay because Dana was outside of the courtroom and had been subpoenaed as a witness. Dana, however, never testified.

Defendant cites *State v. Fisher*, 222 Kan. 76, 563 P.2d 1012 (1977), in support of his position that it was error to allow Dana's out-of-court statements into evidence when she did not actually testify. It is true that the *Fisher* court ruled that K.S.A. 60-460(a) requires a declarant to testify at trial. *Fisher*, 222 Kan. at 82. Thus, it does not support the admission of Dana's statement in this case.

On appeal, the City invokes K.S.A. 60-460(d)(1) and (2), hearsay exceptions for contemporaneous statements. Under these provisions, a hearsay statement is admissible if it was made "(1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, [or] (2) while the declarant was under the stress of a nervous excitement caused by such perception."

We believe that the exception set forth in 60-460(d)(1) applies here. At the time Dana responded to the officer's question, she was perceiving and explaining the condition that her statement explains, *i.e.*, the fact that she and her husband had been drinking. There was no error in admitting her statement to Officer Sitton.

Affirmed.