USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-1350 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. RODRIGO BRAND, Defendant, Appellant. _____________________ No. 94-1351 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. FELIX APONTE-VELAZQUEZ, Defendant, Appellant. _____________________ No. 94-1352 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. CARMELO PULLIZA-DELGADO, Defendant, Appellant. ____________________ ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich and Coffin, Senior Circuit Judges. _____________________ ____________________ Peter Goldberger with whom James H. Feldman, Jr., Pamela A. Wilk, ________________ ______________________ ______________ Alan Ellis and Law Offices of Alan Ellis, P.C. were on brief for ___________ _________________________________ appellant Felix Aponte-Velazquez. Graham A. Castillo Pagan with whom Luis Rafael Rivera was on __________________________ ___________________ brief for appellants Rodrigo Brand and Carmelo Pulliza-Delgado. Luis Rafael Rivera with whom Graham A. Castillo Pagan was on ___________________ __________________________ brief for appellants Rodrigo Brand and Carmelo Pulliza-Delgado. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom ________________________ Guillermo Gil, United States Attorney, Juan A. Pedrosa, Assistant ______________ ________________________ ________________ United States Attorney, and Nelson Perez-Sosa, Assistant United States _________________ Attorney, were on brief for appellee. ____________________ March 26, 1996 ____________________ ALDRICH, Senior Circuit Judge. Appellants Aponte, ____________________ Pulliza, and Brand raise several claims of error on appeal of their convictions for various substantive offenses in connection with a cocaine importation and distribution scheme. Finding none meritorious, we affirm. I. Reconstruction of Trial Record __________________________________ After persistent efforts by appellate counsel to obtain a complete trial transcript, the trial court determined that certain portions -- closing arguments and the court's jury charge -- had been permanently lost. Appellants then moved this court for summary reversal, which we denied without prejudice in an order requesting the court to attempt a recreation adequate for appeal, or, if unable, to determine whether appellants were prejudiced as a result of remaining gaps. The court recreated its jury charge, and located a transcript containing the complete closing argument on behalf of Pulliza and a "substantial portion" of the closing argument for Aponte. It received from Brand's trial attorney some incomplete notes prepared for his closing, along with assurances that it would be impossible to recreate the actual argument. The government filed what the parties agreed is a "reasonable recreation" of its main closing argument, as well as a recreation of its rebuttal, which appellants view as inadequate. All agreed that no contemporaneous objections had  -3- been raised during these segments of the trial. The court then certified that the record had been reconstructed as best as the court and the parties could. The defendants have not shown any specific prejudice arising from the absence of the trial transcript other than the inconvenience of not having the precise text . . . for purposes of developing argument on appeal on the basis of clear error.1 Appellants contend adequate appellate review of their convictions is impossible because the court did not produce a reasonable recreation of the missing transcripts,2 entitling them to reversal and a new trial. They concede that due process does not automatically require reversal when a defendant is denied a full verbatim trial transcript, see, ___ e.g., Bundy v. Wilson, 815 F.2d 125, 135 (1st Cir. 1987) (an ____ _____ ______ "adequate substitute" may suffice) (citing cases), but contend that non-compliance with the Court Reporter Act, 28 U.S.C. 753(b)(1), alone requires reversal and a new trial. We disagree. The Act provides, inter alia, that all open court __________ proceedings in criminal cases "shall be recorded verbatim." 28 U.S.C. 753(b)(1) (1982). This provision is mandatory, United States v. Andiarena, 823 F.2d 673, 676 (1st Cir. _____________ _________  ____________________ 1. Appellants concede plain error is their sole recourse with respect to the incomplete portions of the transcript. 2. We limit our consideration to the closing arguments and jury charge, as any other alleged breaches in the record were not brought to the attention of the district court. -4- 1987), and concededly not complied with in this case, yet nothing prescribes automatic reversal of a defendant's convictions for non-compliance, and we are aware of no cases which so hold. Appellants cite Hardy v. United States, 375 _____ ______________ U.S. 277 (1964), for the proposition that new counsel on appeal3 cannot properly represent their clients without an "entire transcript." Id. at 279-80. Hardy held that an ___ _____ indigent federal defendant is entitled to a trial transcript free of charge in order to perfect an appeal; we do not read it to have created a rule mandating reversal for less than a verbatim account. Alternatively, appellants suggest we follow the Fifth Circuit's view that new counsel on appeal may obtain reversal for lack of a verbatim transcript under 753(b)(1) merely by showing the missing portion is "substantial and significant," United States v. Selva, 559 F.2d 1303, 1306 _____________ _____ (5th Cir. 1977), and that any reconstruction thereof is less than "substantially verbatim." United States v. Pace, 10 ______________ ____ F.3d 1106, 1124-25 (5th Cir. 1993), cert. denied, ___ U.S. ____________ ___, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994). True, in Hardy _____ the Court observed that the right established by Federal Rule of Criminal Procedure 52(b) to have "plain errors or defects" noticed by the court "is illusory if no transcript is available at least to one whose lawyer on appeal enters the  ____________________ 3. Appellants have all obtained new counsel for this appeal. -5- case after the trial is ended." 375 U.S. at 280. Yet this was in the context of deciding whether or not appellant should be afforded a transcript at all. We do not take this _______ statement to mean that if no verbatim transcript is available ________ that an effective appeal is not possible. The majority of circuits construing 753(b)(1) have held that to obtain reversal and a new trial, whether or not there is new appellate counsel, defendant must show specific prejudice to his ability to perfect an appeal, beyond mere non-compliance with the act. See United States ___ _____________ v. Gallo, 763 F.2d 1504, 1530 (6th Cir. 1985), cert. denied, _____ ____________ 474 U.S. 1068, and cert. denied, 474 U.S. 1069 (1986) ____________ (disagreeing with Selva); United States v. Sierra, 981 F.2d _____ _____________ ______ 123, 126-27 (3rd Cir. 1992), cert. denied, ___ U.S. ___, 113 ____________ S.Ct. 2949, 124 L.Ed.2d 696 (1993) (same); United States v. _____________ Antoine, 906 F.2d 1379, 1381 (9th Cir.), cert. denied, 498 _______ ____________ U.S. 963 (1990) (same). But see United States v. Preciado- ___ ___ _____________ _________ Cordobas, 981 F.2d 1206, 1212 (11th Cir. 1993) (as successor ________ court to former Fifth Circuit, bound by Selva). We have _____ indicated preference for the majority view, see Sabatier v. ___ ________ Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978) (holding that if _________ 753(b)(1) applied to extradition proceedings, reversal on account of non-compliance would require showing specific prejudice), and explicitly adopt it today. Appellants conceded to the trial court that the -6- government's reconstruction of its main closing argument is substantially accurate. This should enable effective review for plain error, yet appellants make no particularized claim that such error occurred. Nor do they make any claim that plain error could have occurred during the closing arguments of one of their own attorneys. With respect to the government's rebuttal, we are hard-pressed to conceive what sort of illegitimate argument could have been made during these few moments that might have "so poisoned the well that the trial's outcome was likely affected," Arrieta-Agressot v. ________________ United States, 3 F.3d 525, 528 (1st Cir. 1993) (quoting _____________ United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir. _____________ ____________ 1987)), nor do appellants suggest any based on the reconstruction that was submitted. In any event, given the quantity and strength of the evidence against all three appellants from the testimony of several co-conspirators -- eye-witnesses to their involvement in the various preparations, possessions and transactions amounting to the offenses charged -- we are not persuaded that any deficiency could have risen to a miscarriage of justice; i.e., even if the rebuttal was tainted by some imaginable error, we would not find "a substantial chance that absent the error the jury would have acquitted." Id. We therefore uphold the district ___ court's conclusion that appellants' ability to perfect an appeal was not prejudiced, and turn now to the merits of -7- their claims. -8- II. Motion for Continuance ___________________________ On the morning of trial the defense made a final request for continuance based on the last minute decision of Jorge Hernandez Miller, the lead co-conspirator, to plead guilty and become the government's chief witness. Remaining defendants argued this necessitated more time to adjust trial strategy and gather information to impeach him. After thorough exploration, the court, though sympathetic, saw no justification for delay: [Y]ou had the opportunity to interview him . . . as you told me in chambers that this has been done and now that all the Jencks Act [material] has been turned over . . . the latest bits of information that were generated like the interviews [of the witness] with the agents . . . are going to be turned over to you including rough notes, . . . I will not continue this case. A trial court has wide discretion to grant or deny a request for continuance. United States v. Saccoccia, 58 _____________ _________ F.3d 754, 770 (1st Cir. 1995). "Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel," and would amount to an abuse of that discretion. Morris v. Slappy, 461 U.S. 1, 11-12 (1983) ______ ______ (internal quotations omitted). We assess appellants' special reasons, plus relevant factors such as the amount of time needed for effective preparation and the amount actually available, diligence in preparing for trial and whether the -9- defense contributed to its perceived predicament, the likely utility of a continuance, inconvenience to the court, opposing party, and witnesses, and any unfair prejudice caused by the denial. Saccoccia, 58 F.3d at 770 (citations _________ omitted). Appellants allege the court failed to address "special circumstances of an emergent nature beyond their control." They claim that after Miller's change of plea they suddenly faced an unexpected need to gather impeachment material and to do additional preparation, as they had divided responsibilities among themselves due to the considerable volume of trial material involved,4 and Miller's defection overburdened the remaining defendants. They contend they "could not have been more diligent," would have found valuable impeachment material if granted additional time, and were prejudiced in cross-examining Miller because of the denial; inconvenience to others, by comparison, was minimal. Appellants' accusations against the court are unfounded. As the court pointed out, the defense had had ample time and substantial assistance from the court to prepare for trial, and although more might have helped, that is always true. Defense counsel could have anticipated that  ____________________ 4. Aponte points out that discovery involved "some 1453 documents totaling over 5000 pages." -10- a division of labor strategy might leave them in a bind if one dropped out, especially since the original indictment included some 31 co-defendants who had been pleading out on a regular basis up to and even during trial. The court was very careful to elicit from counsel precisely what more they thought they needed and hoped to find to impeach Miller, and why. It gave a thoroughly reasoned response, observing that the defense had been given unlimited access to the witness for four days prior to the start of trial and at least several more afterward until he took the stand, a "dream for a defense attorney," as well as notes government agents had taken during their interviews of the witness. There was no _____ abuse of discretion in ruling this was sufficient. We add only that we do not see, even with hindsight, what more a continuance would have achieved. The defense had apparently hoped to discredit Miller by implicating him in the uncharged murders of several accomplices in the cocaine conspiracy, and wished more time to locate, interview and subpoena witnesses who could tie Miller to these crimes. The court, however, in a pre-trial ruling, had strictly prohibited introduction of extrinsic evidence of Miller's involvement in the murders and limited cross-examination in reference to these crimes strictly to questioning his motivation to enter the plea agreement,5 in  ____________________ 5. This ruling has not been appealed. -11- accordance with Federal Rule of Evidence 608(b).6 See ___ Tigges v. Cataldo, 611 F.2d 936, 938 (1st Cir. 1979). As to ______ _______ this, post. ____ III. Prosecutorial Misconduct ______________________________ Before trial government counsel had informed the defense and the court that Miller had stated during plea negotiations that he had decided to plead guilty because "he thought that he was going to be imputed with some murders to which he denies, and . . . the reason that motivated him is because he wanted to clear the record that in fact he did not participate in those murders." During a pre-trial interview Miller had told defense counsel roughly the same -- that he was afraid "the government . . . [was] going to bring a massacre against him, a murder against him, but he also stated to us that in fact he did not do that." The plea agreement was admitted in evidence. It made no mention, of course, of murders. During cross-examination defense counsel sought vigorously to impeach Miller's testimony linking their clients to the drug venture by attempting to solicit an  ____________________ 6. (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime . . . may not be proved by extrinsic evidence. Fed.R.Evid. 608(b). -12- admission from Miller that he was motivated to cooperate with the government by a desire to "minimize the severity of the accusations against himself," specifically by avoiding being implicated in, or charged with, the murders. Miller repeatedly denied such motivation, professing only a desire to "repent" and "tell the truth." Appellants now contend this was an outright lie that due process required the government to correct.7 They rely principally upon Napue v. Illinois, 360 U.S. 264 (1959), _____ ________ which held that a defendant's due process rights under the Fourteenth Amendment required reversal of his conviction where the prosecutor failed to correct a witness' denial of receiving promises of leniency in exchange for his testimony, knowing it was false, even though the prosecutor had not himself solicited the falsity. 360 U.S. at 269. The Court said this principle, "implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." Id. ___ Nor did the fact that the jury was presented with other grounds for questioning the witness' credibility "turn[] what was otherwise a tainted trial into a fair one." Id. at 270. ___  ____________________ 7. Defense counsel made no indication to the court at the time that the defense believed the government was under an obligation to clarify Miller's statements about his motivation to plead, and, indeed, indicated satisfaction with coverage of the issue when the court inquired prior to allowing examination of Miller to proceed into another area. -13- Appellants contend defense counsels' equal knowledge of Miller's pre-trial admissions cannot alleviate the government of its duty in this case to bring this impeachment "evidence" before the jury. There are two answers to this. The first is that the court had already ruled that testimony of murders was too prejudicial to be admitted. But, more important, although defendant refused this specific characterization of his motives, he did concede to believing the plea agreement meant that "if I speak about things of which I have knowledge or in which I have taken part, I wouldn't be indicted for them," and "would be sentenced to fewer years." This was a sufficient acknowledgment that his claim of rebirth was less than genuine; there could be no question the government had no duty to go further. IV. Jury Instructions ______________________ Having raised no objections to any aspect of the jury instructions at trial, Aponte now claims plain error both in the court's explanation of reasonable doubt and in its failure to give a requested instruction on the defendant's exercise of his right to remain silent. The following instructions (emphasis ours) contain the alleged errors: A reasonable doubt is a doubt based upon reason and common sense, and may arise from a careful and impartial consideration of all the evidence, or -14- from lack of evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty. -15- If after a careful and impartial __ consideration with your fellow jurors of all the evidence, you are not convinced ______________________ beyond a reasonable doubt that the _________________________________________ defendant is guilty, it is your duty to _________________________________________ find the defendant not guilty. On the ________________________________ other hand, if after a careful and __ impartial consideration with your fellow jurors of all the evidence, you are ________ convinced beyond a reasonable doubt that _________________________________________ the defendant is guilty, it is your duty _________________________________________ to find the defendant guilty. _____________________________ . . . Each defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence. The government has the burden _____________________________ of proving every element of the charge _________________________________________ beyond a reasonable doubt. If it fails _________________________________________ to do so, you must return a not-guilty _________________________________________ verdict. ________ A. Aponte contends that by the first paragraph the court permitted the jury to convict by a degree of proof lower than constitutionally required. He argues that "firmly convinced" suggests a burden of proof akin to the civil "clear and convincing" standard, use of which is impermissible in a criminal case. See Addington v. Texas, ___ _________ _____ 441 U.S. 418, 425 (1979) (clear and convincing is an "intermediate standard" between preponderance of the evidence and proof beyond a reasonable doubt); In re Winship, 397 U.S. _____________ 358, 363-64 (1970) (guilt in a criminal case must be proved by no less a standard than "beyond a reasonable doubt"). According to Aponte, it is linguistically impossible to conceive how "firmly convinced" -16- could equate with "beyond a reasonable doubt," when "clear and convincing" does not. Assessing the instructions as a whole, Victor v. ______ Nebraska, ___ U.S. ___, ___, 114 S.Ct. 1239, 1243, 127 ________ L.Ed.2d 583 (1994), we conclude that the emphasized portions adequately and ultimately conveyed an accurate, unambiguous and comprehensible description of the government's burden and the standard for acquittal. Whether or not the "firmly convinced" definition alone would be constitutionally sufficient to convey the meaning of proof beyond a reasonable doubt, the court's further exposition here left no doubt that the jury's duty was to convict only upon reaching consensus as to guilt beyond a reasonable doubt.8 Nothing further is required. United States v. Andujar, 49 F.3d 16, 23 (1st Cir. _____________ _______ 1995). B. As was his right, Aponte elected not to testify, and requested the following instruction be given to the jury:  ____________________ 8. The "firmly convinced" language has withstood similar attack in a variety of contexts. See United States v. ___ ______________ Velazquez, 980 F.2d 1275, 1278 (9th Cir. 1992), cert. denied, _________ ____________ ___ U.S. ___, 113 S.Ct. 2979, 125 L.Ed.2d 677 (1993) (upholding same pattern instruction used here); United States _____________ v. Hunt, 794 F.2d 1095, 1100-1101 (5th Cir. 1986) ("firmly ____ convinced" adequately conveys "beyond a reasonable doubt" standard); United States v. Taylor, 997 F.2d 1551, 1557 (D.C. _____________ ______ Cir. 1993) (same); see also United States v. Williams, 20 _________ ______________ ________ F.3d 125, 131 (5th Cir.), cert. denied, ___ U.S. ___, 115 ____________ S.Ct. 239, 130 L.Ed.2d 162 (1994); United States v. Barrera- _____________ ________ Gonzales, 952 F.2d 1269, 1272-73 (10th Cir. 1992); United ________ ______ States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995). ______ ______ -17- -18- Under the law, a defendants [sic] does not need to testify, since it is the Government who must prove her [sic]9 guilty beyond a reasonable doubt. No presumption or inference of guilt may be made or drawn. The court declined, instructing instead as quoted above. While he did not object, Aponte now claims violation of his constitutional rights. The Fifth Amendment guarantees a criminal defendant both the right to remain silent and that no adverse inferences may be drawn from his exercise of this right. Carter v. Kentucky, 450 U.S. 288, 305 (1981). Further, "when ______ ________ the defendant makes a timely request that a prophylactic instruction be given . . . [the court] has the constitutional obligation . . . to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." Id.10 We have not read Carter to require use of the exact ___ ______ wording requested, however, so long as the trial court's instructions complied with this obligation. United States v. _____________ Ladd, 877 F.2d 1083, 1089 (1st Cir. 1989). ____  ____________________ 9. The district court apparently accepted from Aponte's appellate counsel a set of proposed jury instructions that counsel believed had been submitted to the court but were inexplicably absent from the record. We note that these instructions were not prepared for Aponte, but for a Sonia Berrios Rodriguez, but since the government did not object to their inclusion in the appellate record as Aponte's requested instructions, we will treat them as such. 10. This obligation is also imposed by statute. 18 U.S.C. 3481 (formerly designated as 28 U.S.C. 632). See United ___ ______ States v. Bruno, 308 U.S. 287 (1939). ______ _____ -19- Our question is whether instructing that the government has the burden of proof and that defendant does not have to testify or present evidence adequately communicates that no adverse inferences may be drawn from the fact that he does not testify. The government urges that we answered this affirmatively in Ladd, where we approved an ____ instruction that the defendant's silence "cannot even be considered by you in arriving at your verdict." Id. Not so. ___ A jury might well think that a defendant's right not to testify means merely that he cannot be called as a witness, leaving it to draw such conclusions from his silence as it felt warranted. An instruction not to consider his failure to testify precisely forbids drawing inferences. Ladd, 877 ____ F.2d at 1089. Here, however, the court mentioned nothing beyond the defendant's right not to testify or present evidence. Carter v. Kentucky makes clear that, once request ______ ________ for a no-adverse-presumption instruction has been made, the "full and free exercise" of the constitutionally guaranteed privilege against self-incrimination requires more than instruction on the right not to testify and to be presumed innocent until proven guilty. 450 U.S. at 305. See also ________ United States v. Eiland, 741 F.2d 738, 743 (5th Cir. 1984) ______________ ______ (holding instructions similar to those given here constitutionally deficient under Carter). ______ We also find, per United States v. Olano, 507 U.S. _____________ _____ -20- 725, ___, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993), that the forfeited error was "plain," and "affect[ed] substantial rights" within the meaning of Fed.R.Civ.P. 52(b). See Bruno ___ _____ v. United States, 308 U.S. 287, 293-94 (1939) (failure to _____________ give requested instruction cautioning against drawing presumptions from defendant's failure to testify was not a mere "technical erro[r] . . . which do[es] not affect . . . substantial rights . . . ."). We therefore perceive discretion to reverse, but no obligation to do so. Fed.R.Civ.P. 52(b); Olano, 113 S.Ct. at 1778. See also _____ ________ Chapman v. California, 386 U.S. 18, 23 (1967) (not every _______ __________ constitutional error automatically requires reversal). Olano contemplates that we guide our discretion _____ under Rule 52(b) by further determining whether the error "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." 113 S.Ct. at 1779 (internal quotations omitted). We have long realized that among the things we may consider is the weight of the evidence of guilt or innocence, without casting it favorably to the government or presuming that credibility issues were resolved in its favor, Arrieta-Agressot, 3 F.3d at 528, to ________________ determine whether the error could have made any difference to the verdict.11 We do not view Olano as having removed or _____  ____________________ 11. At this stage of review for forfeited error the assessment is whether the error was "harmless beyond a reasonable doubt," and differs from so-called "harmless -21- limited such an assessment from our discretionary consideration as a general matter. However, the Court has deemed a small number of "structural defects" not amenable to "quantitative[] assess[ment]," Arizona v. Fulminante, 499 _______ __________ U.S. 279, 308 (1991), including total deprivation of the right to counsel at trial (Gideon v. Wainwright, 372 U.S. 335 ______ __________ (1963)), and lack of an impartial judge (Tumey v. Ohio, 273 _____ ____ U.S. 510 (1927)). Id. at 309. See also id. at 310 (citing ___ ________ ___ additional cases); Sullivan v. Louisiana, 508 U.S. 275, ___, ________ _________ 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable doubt instruction). The distinction these special errors share is that they are "structural defects in the trial mechanism" which affect "the entire conduct of the trial from beginning to end" and "without [which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," rather than being simply "error[s] in the trial process itself." Fulminante, 499 U.S. at 309-10 (internal __________ quotations omitted). We think failure to give a requested Carter instruction falls comfortably in the latter category. ______ It is not the sort of error for which an assessment of the evidence is unsuitable precisely because it concerns the evidentiary value the jury may give to a defendant's election  ____________________ error" review only in that the defendant bears the burden of persuasion. Olano, 113 S.Ct. at 1778. _____ -22- not to testify on his own behalf. Carter, 450 U.S. at 305. ______ On this basis we are confident in saying that the uncontradicted evidence against appellants Aponte and Pulliza, from the testimony of several co-conspirators involved in various aspects of the scheme, was overwhelming, and the verdict rendered would have ensued regardless of the error. In sum, although "the failure to limit the jurors' speculation on the meaning of [the defendant's] silence, when the defendant makes a timely request that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of [defendant's Fifth Amendment privileges]," id., we do not believe it could have seriously ___ affected the fairness of the proceedings.  V. Double Jeopardy ___________________ Aponte maintains that because the same offenses underlying his convictions also formed the basis of a civil forfeiture of some personal assets, pursuant to the Controlled Substances and Money Laundering Acts, 21 U.S.C. 881(a)(6) and (7) and 18 U.S.C. 981, respectively, his criminal sentence constitutes a prohibited second punishment, for the same offenses, in violation of the Double Jeopardy Clause of the Fifth Amendment. See, e.g., United States v. ___ ____ ______________ Dixon, ___ U.S. ___, ___, 113 S.Ct. 2849, 2855-56, 125 _____ L.Ed.2d 556 (1993). The Clause only becomes relevant, however, once a defendant has first been placed in jeopardy, -23- and "even then, it is only the second proceeding that is ______ constitutionally endangered." United States v. Pierce, 60 ______________ ______ F.3d 886, 889 (1st Cir. 1995), pet. for cert. filed, Oct. 19, ____________________ 1995 (No. 95-6474). Aponte contends, against all authority, that jeopardy in the criminal case did not attach until his sentencing, well after imposition of the civil penalty.12 _____ We regard it as beyond question that "jeopardy attaches when the jury is empaneled and sworn." Crist v. Bretz, 437 U.S. _____ _____ 28, 35 (1978). Pierce, 60 F.3d at 889. A glance at the ______ sequence of events in this case, supra note 12, reveals that _____ the criminal sanction therefore cannot have been second to the forfeiture, and thus whether or not civil sanctions under 21 U.S.C. 881(a)(6) and (7) and 18 U.S.C. 981 even constitute punishment for the purposes of the Double Jeopardy Clause is a question we need not reach.  The convictions of appellants are therefore affirmed. _________  ____________________ 12. The following chronology is pertinent: Jury empaneled: September 21, 1993 Criminal trial began: September 22, 1993 Verdicts read: October 1, 1993 Civil action commenced: Nov. 4, 1993 Forfeiture stipulated: March 9, 1994 Forfeiture order: March 10, 1994 Criminal sentencing: March 21, 1994 -24-